Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>RAÚL BAERGA RODRÍGUEZ<br><br>Recurrido | TA2026CE00646 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Civil núm.: G1TR202500261<br><br>Sobre: Art. 7.02 Ley 22-2000 |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero

**Rivera Torres, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, hoy 30 de junio de 2026.

Comparece ante este tribunal apelativo, el Ministerio Público, representado por la Oficina del Procurador General de Puerto Rico, (la parte peticionaria) mediante el recurso de *certiorari* de epígrafe solicitándonos que revisemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama (TPI), el 6 de marzo de 2026, notificada el 19 de marzo siguiente. Mediante este dictamen, el foro primario declaró *Ha Lugar* a la *Moción de Supresión de Evidencia* presentada por el Sr. Raúl Baerga Rodríguez (señor Baerga Rodríguez o recurrido).

Por los fundamentos que expondremos a continuación, denegamos expedir el auto de *certiorari* solicitado.

### I.

Por hechos ocurridos el 23 de agosto de 2025, el Ministerio Público presentó una denuncia contra el señor Baerga Rodríguez por infracción al Artículo 7.02 de la Ley núm. 22-2000, según enmendada, conocida como *Ley de Vehículos y Tránsito de Puerto Rico* (Ley núm. 22-2000), 9 LPRA sec. 5202. Mediante esta, el Ministerio Público le imputó al recurrido conducir o hacer funcionar

un vehículo de motor bajo los efectos de bebidas embriagantes. Como parte de la evidencia, además del testimonio de los agentes que intervinieron, el Ministerio Público contaba con un análisis de muestra de sangre atribuida al señor Baerga Rodríguez, en el que se determinó una concentración de alcohol en la sangre de 0.17%.

El 6 de febrero de 2026, el señor Baerga Rodríguez presentó una *Moción de Supresión de Evidencia*.[1] En esta, el recurrido arguyó que el análisis sobre la extracción de sangre que se le practicó se realizó sin orden judicial y sin su consentimiento, en clara violación a sus derechos constitucionales. Por lo que, solicitó la supresión de los resultados de la referida prueba; así como de cualquier evidencia derivada de la misma.

Posteriormente, el 19 de febrero de 2026, el Ministerio Público presentó una *Moción en Oposición a Moción de Supresión de Evidencia*.[2] En síntesis, adujo que el señor Baerga Rodríguez nunca se negó a la realización de las pruebas, sino que consintió libre y voluntariamente, sin coacción, fuerza o violencia. De manera que solicitó que el foro primario declarara *No Ha Lugar* de plano el petitorio del recurrido.

El 6 de marzo de 2026, se celebró la *Vista de Supresión de Evidencia*.[3] Se admitieron seis (6) exhibits del Ministerio Publico, entre los que se encontraron las advertencias "de embriaguez y las *Miranda*"[4] realizadas al señor Baerga Rodríguez las que se negó a firmar; y el video de la cámara corporal del Agente Jonathan L. Vázquez. Además, el Ministerio Publico, presentó como única

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), Entrada núm. 1, Apéndice 6. La referida moción, incluida como apéndice por la Oficina del Procurador General, se encuentra incompleta. Véase, también, SUMAC TA, Entrada núm. 8, a las págs. 5-6, *Alegato de Oposición de la Parte Recurrida*.

[2] SUMAC TA, Entrada núm. 1, Apéndice 8.

[3] SUMAC TA, Entrada núm. 1, Apéndice 2.

[4] Formularios PPR 615.6, *Advertencias a Persona Bajo los Efectos de Bebidas Embriagantes, Drogas y/o* [sic] *Sustancias Controladas* y PPR 615.4, A*dvertencias Miranda para Persona Sospechosa en Custodia*, respectivamente.

prueba testifical al agente Jonathan L. Vázquez Rodríguez (Agte. Vázquez Rodríguez).

Según surge de la regrabación de la *Vista de Supresión de Evidencia,* en síntesis, el Agte. Vázquez Rodríguez testificó que, el 23 de agosto de 2025, se encontraba junto a su compañero, el agente César González Oppenheimer (Agte. González Oppenheimer) realizando un patrullaje preventivo por la Carretera núm. 755, cerca de la Calle Girasol en el pueblo de Arroyo. Pasadas las 8:45 p.m., observaron a un vehículo varado en uno de los carriles de la referida carretera. Según el agente de la policía, el vehículo de motor interrumpía el flujo del tránsito al encontrarse detenido en el carril; por lo que, encontraron motivo fundado para intervenir con dicho vehículo y con su conductor. Al llegar al vehículo, dentro de este se encontraba el señor Baerga Rodríguez.

Al intervenir con el señor Baerga Rodríguez, se le expidió un boleto por infracción al Artículo 6.23 de la Ley núm. 22-2000, 9 LPRA sec. 5173, por parar, detener, estacionar un vehículo o dejarlo abandonado en las vías públicas en forma tal que estorbe u obstruya el tránsito o cuando por circunstancias excepcionales se hiciere difícil el fluir del mismo. Como consecuencia de la intervención, el Agte. Vázquez Rodríguez percibió que el señor Baerga Rodríguez "hablaba incoherencias" y poseía un fuerte olor a alcohol.

Inicialmente, el Agte. Vázquez Rodríguez declaró que el señor Baerga Rodríguez se rehusó hacerse la prueba de aliento y que, según el agente, indicó que "él lo que quería es que le sacaran sangre. Libre y voluntariamente… varias veces, lo que solicitaba [ininteligible] sacarle la sangre. Que él no iba a soplar que le sacaran la sangre".[5]

---

[5] Regrabación 00:10:00 – 00:10:18.

Sin embargo, más adelante se demuestra que el señor Baerga Rodríguez, contrario a lo inicialmente testificado por el agente, se negó expresamente, en tres ocasiones, a realizarse la prueba de aliento. Además, surge que al señor Baerga Rodríguez, en la intervención, el Agte. González Oppenheimer le apercibió de propinarle un *shock* eléctrico de 50,000 voltios si no se dejaba arrestar.[6] Ello, luego de que el Agte. Vázquez Rodríguez le indicara al recurrido que estaba complicando las cosas al negarse a realizarse la prueba de aliento.

Incluso, el Agte. Vázquez Rodríguez le advirtió que "si usted se negare, objetare, resistiese o evadiese someterse a cualquiera de estas pruebas será arrestado con el fin de trasladarle a una facilidad médica hospitalaria para que se extraigan las muestras pertinentes. Se le advierte que en caso de usted negarse se procederá a buscar una orden emitida por un juez (...)".[7]

Eventualmente, a preguntas de la representación legal del recurrido, el Agte. Vázquez Rodríguez admitió que el señor Baerga Rodríguez se negó en varias ocasiones a realizarse la prueba de alcohol, a firmar las advertencias y que, contrario a lo que expresó inicialmente, el **acusado nunca autorizó expresamente ni consintió a la realización de la prueba de sangre**.[8]

Ese mismo día, en corte abierta, el TPI declaró *Ha Lugar* a la *Moción de Supresión de Evidencia*. Dicho dictamen se redujo a escrito y se notificó el 19 de marzo de 2026. Entre sus determinaciones de hechos, el juzgador señaló que de la prueba desfilada surge que:

> (...) durante toda la intervención el acusado se negó en realizarse pruebas de aliento y firmar las advertencias de embriaguez brindadas. Posteriormente, llegaron refuerzos en los cuales el acusado continuó indicado su negativa en realizarse la prueba de alcohol y que solo quería que lo llevaran a su residencia, e inclusive [*sic*]

---

[6] Regrabación 01:08:55 – 01:16:00.
[7] Regrabación 01:03:20 – 01:05:59.
[8] Regrabación 01:27:15 – 01:27:50.

> indicó que no renunciaría a sus derechos según verbalizó en el video de la cámara corporal del agente Vázquez. De la prueba desfilada no se estableció que se le explicara al acusado las consecuencias de someterse a una prueba de sangre, por el contrario, cuando el acusado les requería explicación a los agentes del orden público mientras lo estaban esposando, el agente César González Oppenheimer le apuntó con el t[á]ser con el fin de que cooperara con el proceso. Como parte del testimonio del agente Vázquez, se indicó que el acusado estaba diciendo "incoherencias" al ser detenido y preguntársele dónde estaba.
>
> A pesar de la negativa insistente del acusado en realizarse las pruebas de aliento y alcohol al punto [*sic*] siempre se negó a firmar las advertencias, el mismo fue arrestado y trasladado al CDT de Patillas para tomarle una muestra para la detención de alcohol en sangre **sin orden judicial**. Una vez allí la enfermera Jennifer Merle Rivera le tomó tres (3) muestras de sangre al acusado. [Énfasis en original]

En desacuerdo con la determinación, el 19 de marzo de 2026, el Ministerio Público presentó una *Solicitud de Reconsideración a Supresión de Evidencia.*[9] En esencia, arguyó que, contrario a lo expresado por el testigo del Ministerio Público, el Agte. Vázquez Rodríguez en la vista, el señor Baerga Rodríguez consintió "tanto expresa como implícitamente",[10] al verbalizar que autorizaba o por no resistirse a pesar de negarse en varias ocasiones y encontrarse bajo arresto. A su vez, argumentó que se equivocó el foro primario al suprimir la evidencia "bajo el pretexto de que el consentimiento implícito opera únicamente en casos de accidentes vehiculares" según la interpretación de *Pueblo v. De Jesús Alvarez,* 214 DPR 753 (2024).

El 27 de marzo siguiente, el recurrido instó una *Moción en Oposición a "Solicitud de Reconsideración a Supresión de Evidencia".*[11] En esta, arguyó que en la *Vista de Supresión de Evidencia* quedó demostrado, incluso, con las declaraciones del testigo del Ministerio Público, que el señor Baerga Rodríguez se negó expresamente en varias ocasiones a realizarse la prueba. Añadió

---

[9] SUMAC TA, Entrada núm. 1, Apéndice 10.
[10] *Íd.*, a la pág. 5.
[11] SUMAC TA, Entrada núm. 1, Apéndice 12.

que, aunque por la negativa expresa no procede aplicar consentimiento implícito, la conducta del acusado al mantener la calma y no ofrecer resistencia física, no equivale a consentimiento voluntario. Esto, mucho menos cuando, a su entender, de la misma vista surge que:

> 13. (...) durante la intervención el Agente Cesar Gonzalez Oppenheimer le informó al imputado "Oiga caballero, si usted no se deja arrestar esto es fácil[,] yo le doy con el taser [sic.] son 50,000 mil voltios le va a dar electricidad un ratito" y activó el taser [sic]. Esto qued[ó] demostrado. V[é]ase el minuto 1:11:35 de la regrabación de la Vista de Supresi[ó]n de Evidencia celebrada el día 6 de marzo de 2026.
>
> 14.Esa amenaza constituye un elemento claro de coerción incompatible con un consentimiento voluntario. Bajo esas circunstancias, cualquier alegación de consentimiento queda jurídicamente viciado.[12]

Finalmente, adujo que de la prueba desfilada surge que, desde el inicio de la intervención, el señor Baerga Rodríguez se negó expresamente a someterse a cualquier prueba, ya fuera de aliento o de sangre; rechazó firmar las advertencias y, en múltiples ocasiones, manifestó su negativa a someterse a dichas pruebas. Lo que evidenciaba una conducta consistente de rechazo y una ausencia total de consentimiento, ya fuera expresa o implícita. Así expuso que, a pesar de ello, el recurrido fue arrestado y trasladado al CDT de Patillas, donde se le extrajo una muestra de sangre sin orden judicial. Por lo que, sostuvo que la misma se obtuvo de manera ilegal y procede mantener la determinación de suprimir la evidencia.[13]

El 10 de abril de 2026, notificada el 20 de abril siguiente, el TPI emitió una Resolución declarando *No Ha Lugar* a la solicitud de reconsideración.

Inconforme con la determinación, el Ministerio Público acude ante esta *Curia* mediante el recurso de *certiorari* de epígrafe, imputándole al foro primario la comisión de los siguientes errores:

---

[12] *Íd.*, a la pág. 3.
[13] *Íd.*, a las págs. 6-7.

EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA ABUSÓ DE SU DISCRECIÓN AL RESOLVER QUE NO EXISTIÓ UN CONSENTIMIENTO VÁLIDO PARA LA EXTRACCIÓN DE SANGRE, PESE A QUE EL RECURRIDO ACCEDIÓ A LA PRUEBA Y, ADEMÁS, PERMITIÓ QUE EL PERSONAL MÉDICO LE EXTRAJERA LA MUESTRA SIN OBJECIÓN, RESISTENCIA O MANIFESTACIÓN ALGUNA DE RECHAZO.

EN LA ALTERNATIVA, EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA ERRÓ EN DERECHO AL RESOLVER QUE EL CONSENTIMIENTO IMPLÍCITO RECONOCIDO POR EL ARTÍCULO 7.09 DE LA LEY DE VEHÍCULOS Y TRÁNSITO NO APLICABA AL CASO DE AUTOS POR NO TRATARSE DE UN ACCIDENTE DE TRÁNSITO, AUN CUANDO EL TEXTO EXPRESO DE LA LEY AUTORIZA EL REQUERIMIENTO DE PRUEBAS QUÍMICAS O FÍSICAS CUANDO EL AGENTE TIENE MOTIVOS FUNDADOS PARA SOSPECHAR QUE LA PERSONA CONDUCÍA O HACÍA FUNCIONAR UN VEHÍCULO DE MOTOR BAJO LOS EFECTOS DE BEBIDAS EMBRIAGANTES.

El peticionario adjuntó a su petición de *certiorari,* la regrabación de las vistas de supresión de evidencia mediante disco compacto y, junto a esta, presentó una *Moción Informativa Sobre Objeto Físico Presentado Físicamente ante el Tribunal de Apelaciones y Solicitud de Autorización de Regrabación como Método de Prueba.*

El 21 de mayo de 2026, emitimos una *Resolución* concediéndole término al recurrido para certificar que el contenido de la regrabación presentada por el Ministerio Público es uno fiel y exacto de lo ocurrido en la *Vista de Supresión de Evidencia* celebrada el 6 de marzo de 2026.

En cumplimiento con lo ordenado, el 29 de mayo, el recurrido certificó que la regrabación presentada era una fiel y exacta a lo ocurrido. Ese mismo día, 29 de mayo de 2026, emitimos una *Resolución* dándonos por cumplidos, aceptando la regrabación mediante disco compacto, como mecanismo para analizar la prueba oral presentada y; a su vez, concediéndole término a la parte recurrida para presentar su oposición.

El 22 de junio de 2026, el señor Baerga Rodríguez presentó un escrito intitulado *Alegato de Oposición de la Parte Recurrida.* Por

lo que nos damos por cumplido y, a su vez, decretamos perfeccionado el presente recurso.

Analizados los escritos de las partes y el expediente apelativo, y escuchada la regrabación de la *Vista de Supresión de Evidencia*; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Auto de *Certiorari***

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020) *IG Builders at al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, a las págs. 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, a las págs. 90-92 (2001). Para poder ejercer sabiamente nuestra facultad discrecional en la consideración de los asuntos planteados mediante dicho recurso, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 62-63, 215 DPR __ (2025)., que dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estos criterios sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Es decir, que el examen que emplea el foro apelativo no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG*, *supra*, a la pág. 176. De otra parte, el ejercicio de las facultades del Tribunal de Primera Instancia merece nuestra deferencia, por tanto, solo intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *BBPR v. SLG Gómez-López*, 213 DPR 314, a las págs. 334-335 (2023); *Ramos v. Wal-Mart*, 165 DPR 510, a la pág. 523 (2006); *Rivera Durán v. Banco Popular de Puerto Rico*, 152 DPR 140, a la pág.155 (2000).

**La Regla 234 de las de Procedimiento Criminal, 32 LPRA Ap. II, R. 234**

En Puerto Rico, el medio utilizado para suprimir la prueba obtenida a través de un registro o allanamiento irrazonable, sin orden judicial, se encuentra en la Regla 234(a) de las de Procedimiento Criminal, *supra*, y en el penúltimo párrafo de la aludida Regla. La referida norma dispone, en lo aquí concerniente, lo siguiente:

> La persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal al cual se refiere la Regla anterior la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:
> (a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.
> (b) …
> (c) …
> (d) …
> (e) …
> (f) …

En la moción de supresión de evidencia <u>se deberán exponer los hechos precisos o las razones específicas que sostengan el fundamento o los fundamentos en que se basa la misma</u>. [...] **El tribunal vendrá obligado a celebrar una vista evidenciaria con antelación al juicio, y ante un magistrado distinto al que atenderá el juicio,** cuando se trate de **evidencia incautada sin previa orden judicial** si en la solicitud la parte promovente **aduce hechos o fundamentos que reflejan la ilegalidad o irrazonabilidad** del registro, allanamiento o incautación. El Ministerio Público **vendrá obligado a refutar la presunción de ilegalidad** del registro o incautación y **le corresponderá establecer los elementos que sustentan la excepción correspondiente al requisito de orden judicial previa**. De declararse con lugar la moción, la propiedad será devuelta, si no hubiere fundamento legal que lo impidiere, y **no será admisible en evidencia en ningún juicio o vista**.

La moción se notificará al fiscal y se presentará **cinco (5) días antes del juicio** a menos que **se demostrare la existencia de justa causa para no haberla presentado dentro de dicho término** o que el acusado **no le constaren los fundamentos para la supresión**, o que **la ilegalidad de la obtención de la evidencia surgiere de la prueba del fiscal**. [Énfasis nuestro].

La regla general es, al efecto de que el procedimiento para impedir que evidencia ilegalmente obtenida sea presentada, es mediante moción radicada antes del juicio en la cual se solicite su supresión. *Pueblo v. Nieves*, 67 DPR 305, 307 (1947). De esta manera no se interrumpen los procedimientos para recibir evidencia y resolver una cuestión colateral. *Pueblo v. Capriles*, 58 DPR 548, 552 (1941). Su presentación previa al juicio economiza tiempo, gastos del proceso, molestias a testigos y al jurado. *Pueblo v. Rey Marrero*, 109 DPR 739, 752 (1980).

Además, la Regla 234 de las de Procedimiento Criminal, *supra*, es clara en cuanto a la obligación que tiene el tribunal sentenciador de celebrar una vista evidenciaria cuando se efectúa un registro o allanamiento sin orden previa. Esta exigencia procesal fue el resultado de la aprobación de la Ley núm. 44-2007 que enmendó la Regla objeto de análisis para establecer el proceso a seguir ante este escenario y a armonizar el texto de la Regla 234 con los precedentes del Tribunal Supremo. *Exposición de Motivos*, Ley Núm. 44-2007. De igual forma, se reitera que "[l]a Regla 234 de las

de Procedimiento Criminal es el mecanismo procesal mediante el cual se puede reclamar los derechos que se consagran en el Artículo II, Sección 10, de nuestra Constitución." *Íd.*

Resaltamos que la enmienda introducida por la Ley núm. 44-2007 establece que la vista evidenciaria debe celebrarse "si en la solicitud la parte promovente aduce hechos o fundamentos que reflejan la ilegalidad o irrazonabilidad del registro, allanamiento o incautación." Regla 234 de las de Procedimiento Criminal, *supra.* Luego del promovente cumplir con este requisito, el registro o allanamiento efectuado se presume ilegal y es el Ministerio Público quien viene obligado a rebatir esa presunción mediante <u>la presentación de prueba que establezca una de las excepciones reconocidas por nuestro ordenamiento jurídico</u> sobre la procedencia de un registro o allanamiento sin orden judicial. *Pueblo v. Báez López,* 189 DPR 918, 955 (2013); *Acarón et al. v. D.R.N.A.*, supra, a la pág. 573 (2012). Sin embargo, puntualizamos que la obligación del Estado de presentar prueba no exime al promovente, como requisito de umbral, <u>de la necesidad de acreditar que es el agraviado por el registro o allanamiento ilegal</u>, según surge de la primera oración de la propia Regla 234, *supra.* E. L. Chiesa Aponte, op. cit., pág. 331-332.

**Ley núm. 22-2000**

En relación con el presente caso, la procedencia de la moción de supresión en relación con pruebas de aliento cobra sentido por cuanto constituyen un registro. *Pueblo v. Montalvo Petrovich*, 175 DPR 932 (2009); *Skinner v. Railway Labor Executive Association et al,* 489 US 602 (1989). No obstante, el tribunal no verá con buenos ojos una moción de supresión de evidencia tras un registro consentido, voluntario y libre de toda coacción, la cual incluye cuando una persona obedece sin protestar al pedido del funcionario público. *Pueblo v. Álvarez De Jesús,* 214 DPR 753 (2024) (citando a

*Pueblo en interés menor NOR*, 136 DPR 949 (1994)). **Cualquier abdicación, expresa o tácita, será considerada al amparo de** (1) si medió fuerza o violencia en su obtención; (2) **si el registro se efectuó después de un arresto**; y (3) si se encontraban presentes otras personas. *Íd.* (*Pueblo v. López Colón*, 200 DPR 273 (2018)). La validez de un registro consentido no requerirá que la persona afectada haya sabido de su derecho a no consentir. *Íd.*

Por otro lado, un agente del orden público tiene autoridad para detener algún vehículo que transite por la vía pública si tiene motivos fundados para creer que el conductor ha cometido alguna violación a la ley. Artículo 10.22 de la Ley núm. 22-2000 (9 LPRA sec. 5302). Véase Regla 11 de las de Procedimiento Criminal, *supra*. Estos "motivos fundados" equivalen a la causa probable y se determinan a base de criterios de probabilidad y razonabilidad. *Pueblo v. Pérez Rivera*, 186 DPR 845 (2012) (citando a *Pueblo v. Ruiz Bosh*, 127 DPR 762 (1991)). Por tanto, dicho funcionario deberá basarse en el mínimo de información—es decir, en aquella información y conocimiento que lleven a una persona ordinaria y prudente a creer que el arrestado ha cometido un delito—que convenza a un juez de que existe causa probable para arresto. *Íd.* (citando a *Pueblo v. Calderón Díaz*, 156 DPR 549 (2002); *Pueblo v. Muñoz, Colón y Ocasio*, 131 DPR 965 (1992)). Esto no significa que el tribunal estará atado a las conclusiones o expresiones de un policía en lo relativo a los motivos fundados, toda vez que el juez tiene como misión la evaluación de la validez del arresto independientemente del criterio subjetivo del agente. *Íd.*

Ahora bien, nuestro ordenamiento considera que toda persona que transite por las vías públicas de Puerto Rico conduciendo un vehículo de motor consintió a someterse a la prueba de campo estandarizada de sobriedad, así como al análisis químico o físico de su sangre, su aliento o de cualquier otra sustancia de su

cuerpo. Artículo 7.09 de la Ley núm. 22-2000 (9 LPRA sec. 5209). La prueba de campo estandarizada y la de aliento se harán en el lugar de la detención por el agente del orden público, a menos que, por circunstancias de seguridad, se deberá hacer dichas pruebas en un lugar cercano a la detención o en el cuartel más cercano. *Íd.* En tal circunstancia, deberá existir (1) motivo fundado para sospechar que la persona ha ingerido alcohol o ha utilizado sustancias controladas; o (2) si ocurre un accidente y la persona se hallaba conduciendo uno de los vehículos involucrados en el accidente. *Íd.* No obstante, **si la persona intervenida se negare, objetare, resistiere o evadiere someterse al procedimiento de las pruebas de alcohol, este será arrestado con el fin de trasladarle a una facilidad médico-hospitalaria para que el personal certificado por el Departamento de Salud proceda a extraerle las muestras pertinentes, previa orden judicial.** *Íd.*

### III.

En esencia, la parte peticionaria señaló que incidió el foro primario al conceder la moción de supresión de evidencia. Arguyó que el consentimiento a la extracción de sangre fue válido por haber sido expreso y voluntario o; en todo caso, en alternativa, de no considerarse que hubo un consentimiento expreso, que se reconozca el consentimiento implícito del Artículo 7.09 de la *Ley de Vehículos y Tránsito de Puerto Rico*, *supra*.

Según reseñamos, todo recurso de *certiorari* presentado ante este foro intermedio deberá ser examinado al palio de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*. De una lectura de la referida norma, surge que no se encuentran presentes los criterios anteriormente enumerados, por lo que no procede nuestra intervención.

Es menester destacar que, de la *Resolución* recurrida, surge que el TPI aquilató la evidencia documental y testimonial desfilada

en la *Vista de Supresión de Evidencia*. A esta última, le adjudicó credibilidad estando en una mejor posición que esta *Curia* para ver y apreciar el comportamiento del Agte. Vázquez Rodríguez mientras este declaraba, en especial, sus manifestaciones, consistencias e incongruencias sobre los acontecimientos que surgen de la grabación de la cámara corporal cuando se intervino con el señor Baerga Rodríguez.

Asimismo, surge de la propia prueba documental y testifical presentada por el Ministerio Público, que el raciocinio del foro primario está ampliamente fundamentado y encuentra cómodo apoyo en la jurisprudencia y en las normas regentes relativas a la obtención de orden judicial previa a la extracción de las muestras de sangre una vez el intervenido se niega a realizarse la prueba de alcohol en el lugar de la detención.

En fin, examinado el recurso y su oposición, los documentos incluidos en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA); así como la regrabación de la *Vista de Supresión de Evidencia*, colegimos que, al palio de la Regla 40 de nuestro Reglamento, antes citada, no procede intervenir en esta etapa de los procedimientos. Esto, debido a que no se nos ha demostrado que el TPI haya incurrido en error, abuso de discreción o actuado bajo prejuicio o erró en la aplicación del derecho. Tampoco se nos puso en condición para entender que nuestra intervención evitaría un fracaso de la justicia.

**IV.**

Por los fundamentos antes expuestos, denegamos la expedición del recurso de *certiorari* solicitado.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El juez Marrero Guerrero está conforme con el resultado y formula la siguiente expresión:

En atención a los hechos particulares del caso, y por no tener razón para sustituir el criterio del Foro Primario en cuanto a su conclusión de cómo sucedieron los mismos, y el resultado que de ellos emana, estoy de acuerdo con la determinación de mis compañeros de Panel. No obstante, me siento en la obligación de consignar dos aspectos en los que quiero dejar plasmado mi criterio. Coincido con la parte peticionaria en que el Artículo 7.09 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra,* no requiere la ocurrencia de un accidente de tránsito para su aplicación. Sin embargo, los desarrollos jurisprudenciales a nivel de Puerto Rico y de los Estados Unidos no me permiten avalar la teoría propuesta por la parte peticionaria de que el consentimiento implícito establecido en la antes referida disposición permitiría la extracción de sangre a una persona sin mediar orden judicial cuando ésta ha rechazado su consentimiento a dicho procedimiento.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones